IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PHYLLIS M. KNIGHT,<br><br>        Plaintiff,<br><br>vs.<br><br>CITY OF OMAHA; KENNETH PORTER, Omaha Police Officer, in his official and individual capacities; VINCENT TYLER, Omaha Police Officer, in his official and individual capacities; TODD SCHMADERER, Omaha Police Chief, in his official and individual capacities; KEN KANGER, Deputy Chief Omaha Police, in his official and individual capacities; CHRISTOPHER OVERTON, Omaha Police Officer, in his official and individual capacities; JAMELLE ROSS, Omaha Police Officer, in his official and individual capacities; ERIC EATON, Omaha Police Officer, in his official and individual capacities; JEAN STOTHERT, Mayor of City of Omaha, in her official and individual capacities; and UNKNOWN OMAHA POLICE OFFICERS, in their official and individual capacities,<br><br>        Defendants. | 8:22CV153<br><br>**MEMORANDUM<br>AND ORDER** |

      Plaintiff is a non-prisoner who has been given leave to proceed in forma pauperis. (Filing 5.) The court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

# I.  SUMMARY OF COMPLAINT

Plaintiff, a resident of Wichita, Kansas, has filed a Complaint[1] suing the City of Omaha, the Omaha mayor, and several named and unnamed Omaha police officers in their official and individual capacities for involving themselves in Plaintiff's eviction from 5403 Grand Avenue in Omaha, Nebraska, on August 26, 2019—something Plaintiff alleges would normally be handled by "the Sheriff or Constable." (Filing 1 at CM/ECF pp. 3, 4, 6-7.) In a previous case litigating this same matter, Plaintiff alleged that the eviction was carried out by the Douglas County constable *with the assistance of* Omaha police officers. The court takes judicial notice of this alleged fact, and Plaintiff will not be permitted to allege otherwise here.[2] *Knight v. City of Omaha*, No. 8:21CV339, 2022 WL 704064, at *2 (summarizing complaint) & Filing 1, at CM/ECF p. 12 (complaint alleging that Douglas County constable executed the court order and writ and "held the order until the gang of . . . cops arrive[d] upon his calling") (D. Neb. Mar. 9, 2022). Plaintiff has litigated this same eviction at least seven times in this court. *See id*. at *2 & n.1 (describing Knight's six prior cases in this court involving the same eviction).

---

[1] Plaintiff has filed what amounts to a 12-page Complaint (Filing 1 at CM/ECF pp. 1-12); 32 pages of information from "A Pocket Book on Human Rights for the Police," unidentified sources describing "Constitutional Rights and State Policy and Procedures" and the "Nebraska Eviction Process," and miscellaneous and incomplete court records (Filing 1 at CM/ECF pp. 13-44); and a blank CD.

[2] The court can sua sponte take judicial notice of its own records and files, and facts which are part of its public records. *United States v. Jackson*, 640 F.2d 614, 617 (8th Cir. 1981). Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it. *Id*. The court can also sua sponte take judicial notice of proceedings in other courts if they relate directly to the matters at issue. *Conforti v. United States*, 74 F.3d 838, 840 (8th Cir. 1996). *See also Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (courts "may take judicial notice of judicial opinions and public records").

Attached to Plaintiff's Complaint is an August 23, 2019, Writ of Restitution issued by the Douglas County Court, Case No. CI 19 11289, directing the Constable of Douglas County to "restore" 5403 Grand Avenue, Omaha, NE 68104 to La Chelle Phillips "with no further notice to" Plaintiff Phyllis Knight by removing Knight from the premises and levying Knight's "goods and chattels." (Filing 1 at CM/ECF p. 38.) The request for service of the Writ of Restitution contained "special instructions" as follows: "PLEASE SERVE THE WRIT ASAP AND ARRANGE FOR BACKUP. PER ATTNY."[3] Preceding the Writ of Restitution in the electronic court records for the Douglas County case is a Judgment entered after court proceedings declaring "there is unpaid rent due and owing the plaintiff. Judgment awarded to: LaChelle Phillips Against: Dr. Phyllis Marie Knight." *Phillips*, Case No. CI 19 11289, Image ID D05067459C01 (Aug. 23, 2019).

Plaintiff generally claims that the Defendants operated as an "organized domestic terrorist Police Gang" assigned by the City of Omaha to "conspire[] in a racial hate crime of sexual harassment through premeditated pattern behavior of espionage and malicious prosecution against the plaintiff to intentionally violate[] her Constitutional right to housing. . . . [and] right to contract." Plaintiff claims that the Defendants—led by Defendant Porter—entered her home and "religious study site of an indigenous woman" on August 26, 2019, without a warrant and "t[ook] over plaintiff[']s intellectual & private property"; that Defendant Porter engaged in "premeditated terroristic behavior of sexual harassment" by threatening to "evict me from everywhere I go"; and that a Black male named Earl Biggs (not a Defendant) who was dressed like a "Blood" gang member defaced her home by removing her Moorish flag, written materials, and pictures from the walls and windows. (Filing 1 at CM/ECF pp. 4, 12.) Plaintiff alleges that the Defendants blocked all the rooms, surrounded Plaintiff, and demanded that she leave the premises or be arrested. (Filing 1 at CM/ECF p. 4.) Plaintiff complains that Defendant Omaha Mayor Stothert failed to return Plaintiff's phone calls on August 26, 2019. (Filing 1 at CM/ECF p. 11.)

---

[3] *Phillips v. Knight*, Case No. CI 19 11289, County Court of Douglas County, Nebraska, Image ID D05067494C01 (Aug. 23, 2019) (available on the JUSTICE public database at www.nebraska.gov); *see also* Filing 1 at CM/ECF p. 39.

This court's opinion in a previous *Knight* case indicates that Plaintiff was evicted that day, but then returned to the premises and was cited for trespassing before finally being removed on September 16, 2019. *See Knight*, No. 8:21CV339, 2022 WL 704064, at *2 n.1 Plaintiff complains that Defendants Tyler, Overton, Ross, and Eaton breached their duty of care when they entered the residence on September 15 or 16, 2019, with Biggs (who unlocked the door), when they allowed Biggs to "take over" her residence and videotape Plaintiff rummaging through her possessions, and when Tyler wrote Plaintiff two trespassing citations. (Filing 1 at CM/ECF pp. 8-10.)

Plaintiff also alleges that Defendants Omaha Chief of Police Schmaderer and Deputy Chief Kanger "twice put plaintiff in jeopardy" on October 18, 2019, when Kanger called Plaintiff on Schmaderer's behalf to "admit[] my issue was a civil matter" and when he failed to "uphold his public oath and standard and duty of care." Plaintiff also claims that Schmaderer failed to train his officers. (Filing 1 at CM/ECF p. 9.)

Plaintiff seems to be asserting claims under 42 U.S.C. § 1983, federal statutes, state law, and broad legal concepts. Plaintiff claims the Defendants "committed a hate crime against a woman"; engaged in "terroristic behavior of sexual harassment" and malicious prosecution; and violated her constitutional rights to housing and to contract. In addition, Plaintiff alleges in string-cite fashion several of the following claims against each Defendant:

> Breach of Duty, Oath, Policy and Customs, Espionage Act, Fourth Amendment Right "each man's home is his castle," secured from unreasonable searches and seizures of property by the government, Fifth and Fourteenth Amendment protects due process rights, Takings Clause; "nor shall private property be taken for public use without compensation," Hate Crime of Domestic Terrorism, Terrorist Threats, Violation of Right, Religious Rights under RLUIPA §§ 2000cc, et seq., protect individuals, houses of worship, and other religious institutions from discrimination in zoning and landmarking laws pursuant to Indian Treaties Rights, RICO ACT, Human Rights Crime Against a Women, Failure to Train, conspiring in organized crime, Criminal Trespassing, The Espionage Act

4

(Filing 1 at CM/ECF pp. 8-11 (combined list of Plaintiff's claims, as written in Complaint, against all Defendants).)

Claiming actual damages of $500,500,000[4] and punitive damages of $899,500,000 (Filing 1 at CM/ECF pp. 4, 12), Plaintiff alleges that the Defendants caused a "lifetime" of depression and "life-threatening pain and punishment of severe intentional infliction of emotional distress and severe mental anguish," as well as the loss of 30 years of trade secrets and copyrights and "all her assets."[5] (Filing 1 at CM/ECF pp. 4, 12.)

## II. STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

---

[4] Plaintiff requests $500,500,000 on page 4 of her Complaint and $500,500.000 [sic] on page 12. (Filing 1.)

[5] Plaintiff claims to be "an orphan, career artist, singer, songwriter, comedian, comic and professional braid artist . . . registered with the Library of Congress US Copyright Office and BMI music publishing." (Filing 1 at CM/ECF p. 12.) She claims to have few assets in her Application to Proceed in District Court Without Prepaying Fees or Costs (Filing 2).

5

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (internal quotation marks and citations omitted). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

### III. DISCUSSION

Few of the statutes, constitutional provisions, codes, and legal concepts/phrases string-cited by Plaintiff give rise to a plausible claim on the facts alleged. The court will only briefly discuss those claims that are conceivable.[6] *See Knight v. Biggs*, No. 8:22CV110, 2022 WL 1016475, at *1 (D. Neb. Apr. 5, 2022) (given that case was nearly identical to previous case challenging same eviction and plaintiff's numerous other non-meritorious cases regarding such eviction, "the court will not repeat its discussion of the various reasons why Plaintiff's Complaint fails to state a claim upon which relief may be granted, or why amendment would be futile. Plaintiff is cautioned . . . that while she has a right to access the courts, this right of access cannot be unlimited in the face of abuse.").

---

[6] Although not a conceivable claim worthy of separate discussion, Plaintiff's claim that the Omaha mayor, Defendant Stothert, somehow violated the law by failing to return her telephone calls on the day of the eviction has previously been characterized by this court as "patently frivolous," and the court will not address this claim anew. *Knight*, No. 8:21CV339, 2022 WL 704064 at *3 (failure to state claim when Knight alleged that city, county, state, and federal officials failed to return her calls or respond to her complaints regarding same eviction). Further, and as relevant to the claims asserted here, previous *Knight* cases challenging the same eviction with similar alleged facts have discussed in detail why Plaintiff failed to allege claims under RICO, various Indian treaties, and section 1983 for conspiracy. *Knight v. Biggs*, No. 8:21CV379, 2022 WL 71674 (D. Neb. Mar. 10, 2022).

### A. Fourth Amendment Claim Against Police & City of Omaha

The closest Plaintiff comes to stating a claim is her allegations that the City of Omaha and the Omaha police violated the Fourth Amendment's protection against unreasonable seizures. However, this court has previously determined that Plaintiff failed to state a claim that six of the same Omaha police officers who are named as Defendants here violated the Fourth Amendment's prohibition against unreasonable seizures by entering and seizing her property pursuant to a facially valid writ of execution, and this court will not revisit that determination as to the named and unnamed Omaha police Defendants and the City of Omaha. *Knight*, No. 8:21CV339, 2022 WL 704064 at *3 (same Fourth Amendment claim made, and found insufficient, as to Defendants City of Omaha, Porter, Tyler, Overton, Eaton, Schmaderer, and Kanger). *See also Coonts v. Potts*, 316 F.3d 745, 750-51 (8th Cir. 2003) (deputies' actions in conducting levy on property under a "facially-valid writ of execution" was a reasonable seizure under the Fourth Amendment despite challenges to the writ's lawfulness); *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 536-37 (8th Cir. 1999) (deputy's erroneous seizure of boat and trailer while acting pursuant to a writ of execution did not support a viable Fourth Amendment claim).

### B. Due Process Claim

The only mention Plaintiff makes of "due process" is in string-cite fashion as to Defendant police officers Porter, Tyler, Ross, Eaton, and unknown officers. "The Due Process Clause provides the familiar guarantee of fair procedures, prohibiting the deprivation of life, liberty, or property by a State without due process of law. In addition, under the rubric of substantive due process, it protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them." *Flowers v. City of Minneapolis, Minn.*, 478 F.3d 869, 872-73 (8th Cir. 2007) (internal quotation marks and citations omitted).

To the extent Plaintiff intends to allege a violation of her right to procedural due process, her claim fails because she does not allege that the county court proceedings leading up to the issuance of the Writ of Restitution and the execution thereof constitute

7

lack of "sufficient process," including lack of notice and an opportunity to respond. To the contrary, Plaintiff received both. *Padda v. Becerra*, 37 F.4th 1376, 1382 (8th Cir. 2022) (discussing elements of procedural due process). Further, it is not clear that Plaintiff had a protected interest in the property, as evidenced by the county court's conclusion that Plaintiff repeatedly failed to pay her rent and should, therefore, be evicted. *See Pahnke v. Anderson Moving & Storage*, 393 F. Supp. 2d 892, 897 (D. Minn. 2005) (no federal due process claim stated under section 1983 when plaintiff alleged that defendants complied with judge's order regarding eviction, but violated procedure provided by state statute; "A violation of state law does not give rise to a constitutional violation. Indeed, Plaintiffs cite to no authority to support their proposition that immediate eviction pursuant to a writ of recovery is a constitutional violation." (internal citation omitted)).

Insofar as Plaintiff purports to allege that the Defendants' seizure of her property violated her Fourteenth Amendment right to substantive due process, "[a]ll claims of an unconstitutional search or seizure must be addressed solely in terms of the Fourth Amendment, not the 'fundamental fairness' requirement 'under a "substantive due process" approach.'" *Garcia-Torres v. Holder*, 660 F.3d 333, 337 (8th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 388, 395 (1989)). The court has applied the Fourth Amendment to Plaintiff's claim above, and may not reexamine the claim in the context of substantive due process.

## C. Failure-to-Train Claim

Like this case, in *Knight v. City of Omaha*, No. 8:21CV339, 2022 WL 704064, Plaintiff also alleged that the City of Omaha, on a *respondeat superior* theory of liability, and Defendant Schmaderer, the Omaha chief of police, failed to train the police officers assisting with the eviction. This court dismissed that complaint as subject to preservice dismissal under 28 U.S.C. § 1915(e)(2) without leave to amend because Plaintiff's complaint "suffer[ed] from the same sort of pleading defects as Case Nos. 8:19CV206 and 8:21CV378"—two of Plaintiff's other cases challenging her eviction— and because "[n]one of the state and federal statutes, constitutional provisions, regulations, codes, or legal concepts string-cited by Plaintiff give rise to a plausible

8

claim on the facts alleged." *Id.* at *3 (plaintiff's complaint alleged, among many other things, that defendants violated the Fourth Amendment and the Takings Clause, engaged in terroristic threats, violated RICO and The Espionage Act, and committed state torts). Because the same facts against the same Defendants are alleged here, the court will not repeat its analysis.

### **D. Negligence**

Plaintiff filed her Complaint on a pro se form entitled "Complaint for a Civil Case Alleging Negligence," alleging that the Defendant Omaha police officers participated in her eviction, which a "police officer of ordinary prudence in a similar circumstance[] would not have been involved." (Filing 1 at CM/ECF p. 4.) Further, she alleges that Mayor Stothert is "liable for negligence breach of duty" for not answering Plaintiff's telephone calls on the date of the eviction (Filing 1 at CM/ECF p. 11.), and under a heading called "RELIEF," Plaintiff alleges—regarding no one in particular—"[f]or premeditated negligent behavior severely harmful, intentional, willful and wanton." (Filing 1 at CM/ECF p. 12.)

The court has jurisdiction over Plaintiff's state-law negligence claim pursuant to 28 U.S.C. § 1367(a), which permits a district court to exercise supplemental jurisdiction over claims that are part of the same case or controversy as the claims that fall within the court's original jurisdiction. However, a district court has discretion to decline supplemental jurisdiction when "all claims over which it has original jurisdiction" have been dismissed. 28 U.S.C. § 1367(c)(3). In most cases, when federal and state claims are joined and the federal claims are dismissed, the pendent state claims are dismissed without prejudice "to avoid '[n]eedless decisions of state law . . . as a matter of comity and to promote justice between the parties.'" *Ivy v. Kimbrough,* 115 F.3d 550, 552-53 (8th Cir. 1997) (alteration in original) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966)). Therefore, the court declines to exercise supplemental jurisdiction over this state-law claim.

Alternatively, because Plaintiff lives in Kansas, she claims this court has diversity jurisdiction over this matter—that is, the parties are of diverse citizenship and

the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). The parties appear to be diverse, and the court will assume for purposes of efficiency that the amount in controversy is legitimately more than $75,000, although this court has previously questioned this in some of Plaintiff's other cases.[7]

"To prevail in any negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and resulting damages." *Lewison v. Renner*, 905 N.W.2d 540, 548 (Neb. 2018). While under Nebraska law, city police officers assisting a constable or sheriff acting under a valid writ of restitution issued by a county court can be liable for negligence for damage to property during execution of a writ of restitution[8], the court finds no Nebraska law indicating that a city

---

[7] *See Knight v. Phillips,* No. 8:21CV408, 2022 WL 542564, at *2 (D. Neb. Feb. 23, 2022) ("Although the court has serious misgivings regarding the truthfulness of Plaintiff's allegation that the amount in controversy exceeds $75,000, at this point in time it cannot say to a legal certainty that the claim is really for a lesser amount."); *Knight v. Phillips*, No. 8:21CV408, 2021 WL 4941812, at *2 (D. Neb. Oct. 22, 2021) (giving Plaintiff leave to amend to allege sufficient facts to establish satisfaction of jurisdictional amount); *Knight v. Chatelain*, No. 8:19CV206, 2019 WL 2464789, at *7 (D. Neb. June 13, 2019), *aff'd,* 798 F. App'x 971 (8th Cir. 2020) (giving leave to amend to allege with particularity any symptoms or physical manifestations of her alleged emotional distress and to attach copies of all supporting evidence, including medical records, to establish jurisdictional amount).

[8] A peace officer may be held liable for negligent or wrongful acts causing damage to property. If an officer, in executing a writ of restitution or possession, wantonly or carelessly and roughly handling chattel property injures it, he is liable for the damage caused. On the other hand, a sheriff is not liable for minor items of breakage caused by the eviction of a tenant, where negligence is not shown, even though the plaintiff's title fails and the landlord may be liable. Likewise, . . . where an officer takes property by virtue of a writ, and subsequently, through want of proper care or diligence, allows it to be injured, wasted, or lost, or diverted to some other purpose, he is liable for the resulting injury.

*Jeffres v. Countryside Homes of Lincoln, Inc.*, 333 N.W.2d 754, 762 (Neb. 1983) (internal quotation marks and citations omitted) (if a city official assists the constable in executing a writ of restitution, the official "would be liable for its own negligent acts

10

police officer can be liable for negligence *for the mere act of assisting* in a constable's or sheriff's execution of a valid writ of restitution, which is what Plaintiff alleges here.

As to Plaintiff's claim that Mayor Stothert was negligent for failure to answer Plaintiff's telephone calls on the day of the eviction, the court finds no authority that the mayor had any legal duty to do so or that the mayor's failure to answer Plaintiff's calls was the proximate cause of Plaintiff's alleged damages. Finally, Plaintiff's broad negligence allegation directed at no Defendant in particular ("[f]or premeditated negligent behavior severely harmful, intentional, willful and wanton" (Filing 1 at CM/ECF p. 12)) violates the minimal pleading standard in Federal Rule of Civil Procedure 8, which requires that every complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Therefore, Plaintiff has not, and cannot, state a negligence claim based on the facts she has alleged in this case.

## IV. CONCLUSION

Plaintiff has failed to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2). Further, in light of the approximately eight lawsuits this court has entertained involving the same factual situation, many of the same parties, and many of the same claims, this case is frivolous and will be dismissed with prejudice. *See Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002) (dismissing complaint as frivolous and stating that "[a] complaint is frivolous when it lacks an arguable basis in either law or fact" (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989))); *Howard v. Whataburger*, No. 4:19-CV-04035, 2019 WL 2016874, at *2 (W.D. Ark. May 7, 2019) ("28 U.S.C. §

---

in so doing"). However, here Plaintiff does not allege that her property was broken, damaged, or diverted to some other purpose due to negligence of the Omaha police officers. Rather, she claims she was deprived of "30 years of Trade Secrets and Copyrights" and "all her assets." (Filing 1 at CM/ECF p. 12.) This was not contrary to the Writ of Restitution, which specifically ordered the constable to levy Knight's "goods and chattels" in light of her repeated failure to pay rent. (Filing 1 at CM/ECF p. 38.)

1915(d) permits federal courts to dismiss duplicative complaints as frivolous or malicious"); *Stompingbear v. Kelley*, No. 6:18-CV-06105, 2019 WL 2018478, at *3 (W.D. Ark. Apr. 11, 2019), *report and recommendation adopted*, No. 6:18-CV-6105, 2019 WL 2016875 (W.D. Ark. May 7, 2019) ("A duplicative Complaint may be dismissed as frivolous under § 1915"); *Filipe v. FBI*, No. 8:18CV215, 2018 WL 11249338, at *1 (D. Neb. June 1, 2018) ("the court will dismiss this action as frivolous and with prejudice as the defects in the Complaint cannot be remedied through more specific pleading"); *Mayard v. Tallarico*, No. CIV. 13-661, 2013 WL 2470243, at *2 (D. Minn. June 7, 2013) ("This action is frivolous, because Plaintiff has not shown any arguable basis in law or in fact for commencing a second lawsuit that seeks to present the same claims that were fully litigated (and decided by a jury) in *Mayard I*."); *Zhang v. Equity Off. Properties Tr.*, No. CIV. 06-2265, 2007 WL 26324, at *10 (D. Minn. Jan. 3, 2007), *aff'd in part sub nom. Yan Zhang v. Equity Off. Properties Tr.*, 313 F. App'x 926 (8th Cir. 2009) (unpublished) (in context of discussing Rule 11 sanctions, court found that plaintiff "engaged in frivolous, bad faith litigation in light of the fact that he has previously lost these same claims three times and been sanctioned by the state court").

Plaintiff will not be given leave to amend because any such amendment would be futile. *See Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 719-20 (8th Cir. 2014) (district courts can deny motions to amend when such amendments would be futile, such as claims that are frivolous or could not withstand a 12(b)(6) motion to dismiss); *Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) ("frivolous claims are futile").

Finally, the court concludes that the frequency with which Plaintiff has filed similar lawsuits in this court warrants restrictions on future filings. As Plaintiff has previously been warned:

> The Court has authority to control and manage matters pending before it. . . . The need for such control bears noting. First, Rule 1 of the Federal Rules of Civil Procedure provides that the rules shall be construed to secure the just, speedy, and inexpensive determination of every action. Three fundamental goals underlie this mandate; maintaining the quality of justice, avoiding delay, and improving the efficiency of dispute resolution.

> In order to secure these values, we must recognize that judicial resources are limited in the short run and need to be protected from wasteful consumption. Frivolous, bad faith claims consume a significant amount of judicial resources, diverting the time and energy of the judiciary away from processing good faith claims.
>
> The most apparent effect of excessive litigation is the imposition of unnecessary burdens on, and the useless consumption of, court resources. As caseloads increase, courts have less time to devote to each case. A lack of adequate time for reflection threatens the quality of justice. . . . Abusive litigation results in prolonged, repetitive harassment of defendants causing frustration and often extraordinary and unreasonable expenditures of time and money defending against unfounded claims.
>
> Defendants have a right to be free from harassing, abusive, and meritless litigation. Federal courts have a clear obligation to exercise their authority to protect litigants from such behavior. The Court may, in its discretion, place reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process. These restrictions may be directed to provide limitations or conditions on the filing of future suits.

*Knight v. Biggs*, No. 8:22CV110, 2022 WL 1016475, at *2 (quoting *In re Tyler*, 839 F.2d 1290, 1292-93 (8th Cir. 1988), and citing *Williams v. McKenzie*, 834 F.2d 152, 154 (8th Cir. 1987) ("An in forma pauperis litigant's access to the courts is a matter of privilege, not of right, and should not be used to abuse the process of the courts.")). Additionally, Plaintiff was cautioned that "if she files additional lawsuits regarding this same subject matter, the court may consider imposing measures limiting the frequency in which Plaintiff may file lawsuits in this court." *Knight*, No. 8:22CV110, 2022 WL 1016475, at *2.

Because Plaintiff has ignored these admonitions, the court will now impose filing restrictions upon Plaintiff as follows: from this point forward, Phyllis M. Knight shall file no further pro se cases in the United States District Court for the District of Nebraska regarding her August 26, 2019, eviction from 5403 Grand Avenue in Omaha, Nebraska, without first seeking leave of court to do so, as set forth below. If Plaintiff proposes to file a pro se complaint regarding her August 26, 2019, eviction which lacks

a legal basis, the court will direct the Clerk of Court to return the proposed complaint to Plaintiff without filing it.

IT IS ORDERED:

1. The Clerk of Court shall update the court's docket sheet in this case to include *all* of the Defendants listed in Plaintiff's Complaint at Filing 1, at CM/ECF pp. 1, 6, and 7, as many Defendants were inadvertently omitted when this case was opened;

2. This case is dismissed with prejudice for failure to state a claim upon which relief may be granted and because it is frivolous pursuant to 28 U.S.C. § 1915(e)(2). Leave to amend Plaintiff's Complaint shall not be granted because such amendment would be futile;

3. The court imposes the following filing restrictions upon Plaintiff: from the date of this Memorandum and Order and going forward, Phyllis M. Knight shall file no further pro se cases in the United States District Court for the District of Nebraska regarding her August 26, 2019, eviction from 5403 Grand Avenue in Omaha, Nebraska[9];

4. Any future case proposed to be filed in this court by Phyllis M. Knight shall be referred to the Supervising Pro Se Judge for review before filing, and the Clerk of Court is directed not to file any such case until this review has been completed. If Plaintiff proposes to file a pro se complaint regarding her August 26, 2019, eviction which lacks a legal basis, the court will direct the Clerk of Court to return the proposed complaint to Plaintiff without filing it; and

5. A separate judgment shall be entered.

DATED this 15th day of August, 2022.

---

[9] This restriction does not apply to Plaintiff's new case filed on August 12, 2022, regarding the same eviction. *Knight v. Douglas County Nebraska*, No. 8:22CV293 (D. Neb.).

14

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge